JOSEPH CARLONE, Respondent, v. HARTSDALE CONSTRUCTION CORP. et al., Defendants, and HARRY JERESKI, INC., Appellant.

HARTSDALE CONSTRUCTION CORP. et al., Third-Party Plaintiffs, and HARRY JERESKI, INC., Third-Party Plaintiff-Appellant, v. B. & A. CARPENTERS, INC., Third-Party Defendant-Respondent.

First Department, November 14, 1961.

*Sidney A. Schwartz* of counsel (*Alexander, Ash & Schwartz* of counsel to *Hanlon & Dawe,* attorneys), for appellant.

*Abraham Markhoff* of counsel (*Stephen A. Wise* with him on the brief), for respondent.

*John Nielsen* of counsel (*Perrell, Nielsen & Stephens,* attorneys), for third-party defendant-respondent.

*Per Curiam.* In December, 1954, Hartsdale Construction Corporation, through Harry Jereski, Inc., was constructing an apartment house in Hartsdale, Westchester County. Plaintiff was an employee of B. & A. Carpenters, Inc., which, under a subcontract with Jereski, was doing the carpentry work in the construction. Empire Park Square Lumber Co. supplied the lumber for the job.

On December 31 plaintiff met with an accident. At the time he was engaged in laying planks across two iron beams in order to form a temporary flooring. The method of work was for plaintiff to carry a plank out over the planks already laid and then return. In so doing, he walked on the planks he had previously laid. One of these broke, due to a knothole, and plaintiff fell and received the injuries for which he sues.

Plaintiff sued the construction company, Jereski and the lumber company. Defendant Jereski brought a third-party action against plaintiff's employers. The case against Hartsdale Construction Corporation was dismissed; the jury exonerated the lumber company and found a verdict against Jereski, the appealing defendant. By consent of the parties the court took the third-party action under advisement and finally dismissed the same.

The question in the case is whether the defendant is responsible for the use of the defective plank which caused plaintiff's injury. According to the agreement between the defendant and plaintiff's employer, defendant was to supply all materials except nails. The practice on the job, as shown by the testimony, was that the carpentry subcontractor would notify defendant's foreman as to what lumber would be needed, and the foreman would order the lumber from the supplier by telephone. When the lumber arrived on the job, defendant's foreman would direct the driver where to unload it, and either he, the foreman, or a representative of the carpenters would check the delivery for quantity and general conformity with what was ordered. Thereafter, the carpenters took charge of the lumber and cut it to the sizes required. In so doing, it was their practice to reject any pieces not found to be of suitable strength. The plank in question was sawed from a larger plank and this was, of course, done by the carpenters.

The written contract between the defendant and the carpenters contains the following provision: " 3. All materials, if any to be received under this agreement, which are to be furnished by

others, shall be unloaded, received, assorted, properly protected, and secured by the Subcontractor who shall carefully check and receipt for the delivery of same, and assume all responsibility for any shortages which are not promptly reported to the Contractor. It shall be the Subcontractor's duty to check the requirements for each such item promptly after the delivery of same for errors or omissions, which if any are found, shall immediately be reported to the Contractor as a means of preventing delays when the said materials are required." While there is no specific provision in the above for inspection for quality, what does appear, plus the testimony of the practice, makes it perfectly clear that the subcontractor assumed responsibility for the quality of the lumber, especially in connection with whether any particular piece was suitable from the standpoint of safety. No duty other than what would flow from the obligation to supply a proper plank is suggested by the plaintiff, and since responsibility for that was assumed by the employees of the subcontractor — including the plaintiff himself — it is difficult to see how liability can attach.

Plaintiff relies upon *Dolnick* v. *Donner Lbr. Corp.* (300 N. Y. 660, affg. 275 App. Div. 954). The vital distinction between that case and the instant action is in the details of the inspection of the lumber. The general contractor in the *Dolnick* case made all of the inspections involved, and its failure to do this properly resulted in its being cast in damages. As indicated, the inspections here were, to the knowledge of all concerned, actually made by the subcontractor. As no liability was established against this defendant, the complaint should have been dismissed. This would render the third-party action academic and the dismissal of that action is therefore sustained.

The judgment in *Carlone* v. *Harry Jereski, Inc.*, should be reversed on the facts and the law, and the complaint dismissed, with costs. The judgment in *Jereski* v. *B. & A. Carpenters, Inc.*, in favor of said defendant should be affirmed, with costs to defendant B. & A. Carpenters, Inc.

BOTEIN, P. J., BREITEL, RABIN, VALENTE and STEUER, JJ., concur.

Judgment in *Carlone* v. *Harry Jereski, Inc.*, unanimously reversed on the facts and on the law, with costs to appellant and the complaint dismissed, with costs. Judgment in *Harry Jereski, Inc.* v. *B. & A. Carpenters, Inc.*, unanimously affirmed, with costs to defendant B. & A. Carpenters, Inc. Settle order on notice.